# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MONTANA

## HELENA DIVISION

_____

| | | |
|---|---|---|
| SHERMAN P. HAWKINS | ) | Cause No. CV 07-81-H-DWM-RKS |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER PERMITTING PLAINTIFF |
| | ) | TO FILE AN AMENDED COMPLAINT |
| MIKE FERRITER, et. al. | ) | AND FINDINGS AND RECOMMENDATION |
| | ) | OF UNITED STATES MAGISTRATE JUDGE |
| Defendants. | ) | |

_____

This matter comes before the Court on Plaintiff's Complaint filed December 26, 2007.

(Document 2).

## I.  STATEMENT OF THE CASE

### A.  Jurisdiction

Plaintiff filed his Complaint pursuant to 42 U.S.C. § 1983 alleging a denial of due

process regarding a disciplinary hearing held at the Montana State Prison, that the Montana

Parole Board improvidently denied Plaintiff's parole and that Defendants' denied Plaintiff's right

to practice his religion or see his priest.  Given the federal constitutional issues presented, the

Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

### B.  Parties

Plaintiff is a state prisoner currently incarcerated at the Montana State Prison in Deer

Lodge, Montana.  He is proceeding pro se.  He was granted leave to proceed in forma pauperis on

ORDER PERMITTING PLAINTIFF TO FILE AN AMENDED COMPLAINT AND FINDINGS
AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE -
CV-07-058-DWM-RKS / PAGE 1

January 18, 2008.  (Document 6).  Plaintiff has now paid his statutory filing fee for this matter. (Document 9).

The named Defendants are:  Mike Ferriter, Mike Mahoney, Ross Swanson, Ken Neubauer, Carla Strutzel, Roxanne Wigert, Howard Wigert, David Pentlair, Jeff Crowe, Ken Crozby, Ed Foley, Hank Pfeifer, Jeff Walters, Craig Thomas, Margaret Bowman, Mike McKee, and Governor Brian Schweitzer.  (Document 2, pp. 2-4).

### C.  Factual Allegations

1. April 4, 2007 Disciplinary Hearing

Plaintiff alleges that in March 2007, he was taken to maximum security and placed in a detention cell ("the hole") based upon allegations that he was involved with an escape attempt. Plaintiff was left in the hole for seven days.  On March 12, 2207, Plaintiff received and signed a disciplinary infraction report/notice of hearing.  The write-up stated that, "After a thorough investigation if was found that inmate Hawkins was going to be involved in an escape attempt. The escape was to take place on the above date.  Evidence was collected ensuring that an escape was planned." (Document 2-2, p. 8).  The report initially identified the infraction number and name as, "4229–conspiring to commit 4101–escape."  At some point the number 4229 was crossed out and replaced with the number 4108.  At the bottom of the report there was a notice of hearing which stated,

> I have received a copy of this notice and have been informed of my rights to:
>   1. Have a Hearing (Date): 3/15/2007 Time: any  Place: Max.
>   2. Be  present at the hearing and present evidence and witness on my
> behalf.

ORDER PERMITTING PLAINTIFF TO FILE AN AMENDED COMPLAINT AND FINDINGS
AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE -
CV-07-058-DWM-RKS / PAGE 2

>I understand, if found guilty, I will be subject to imposition of the sanctions as
>outlined in the institutional Inmate Disciplinary Policy.

The notice was signed by Plaintiff on March 12, 2007.  (Document 2-2, p. 8).

Plaintiff contends that he did not receive notice of the date of the actual hearing (which was eventually held on April 4, 2007) but he admits in his Complaint that the disciplinary hearing investigator (Defendant Pentlair) came to Plaintiff's cell on March 13, 2007 in response to Plaintiff's request for an interview but did not have time to hold one.  Plaintiff explains that Officer Pentlair therefore postponed the disciplinary hearing due to be held on March 15, 2007 and promised to return before March 20, 2007 the rescheduled date for the hearing.  On March 20, 2007, Officer Pentlair returned to Plaintiff's cell, again postponing the hearing stating that he needed to interview Plaintiff.  However, Officer Pentlair never returned to interview Plaintiff. (Document 2–Complaint, p. 7, ¶ 28).

The hearing date was changed to April 4, 2007 but Plaintiff contends that he did not receive notice of that particular hearing date.  At the hearing, Plaintiff asked the hearings officer, Defendant Crozby, if he could have a postponement so that he could have an interview with Officer Pentlair.  Officer Crozby denied that request.  Plaintiff gave Officer Crozby his written statement.

The disciplinary hearing decision is attached to Plaintiff's Complaint.  It indicates that the infraction number and name were "4108–conspiring to commit (4101) escape."  It states that a continuance was granted to investigate the incident.  It also states that the continuance was based on the inmate's request to see an investigator.  Plaintiff's plea was not guilty and his statement

ORDER PERMITTING PLAINTIFF TO FILE AN AMENDED COMPLAINT AND FINDINGS
AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE -
CV-07-058-DWM-RKS / PAGE 3

was as follows:  "I have proof that I wasn't involved, but the investigator needs to go check it out and he never came and talked to me.  There are phone calls that will prove I was not involved.  There is a lot more to this.  I'm not involved."

Defendant Crozby's found Plaintiff guilty based upon a "CI report naming Hawkins and physical evidence found to corroborate."  (Document 2-2, p. 9).  Defendant Crozby imposed a sanction of 30 days detention ("the hole") and reclassification in administrative segregation.  Plaintiff was given a copy of the decision to sign.

Plaintiff contends that the write up he received on March 12, 2007 was different from the write up that he was convicted of during the hearing in that it involved a more severe charge.  Plaintiff states that all appeals were denied.  Plaintiff contends that the misconduct guilty finding deprived him of all his "liberty interest" by imposing an "atypical and significant hardship" on him by applying the faulted disciplinary procedure to him, and by his parole hearing causing him to serve more time in prison.

He asks that the Court declare the disciplinary procedures as applied to Plaintiff unconstitutional and a violation of Plaintiff's due process rights.  He wants the disciplinary decision to be dismissed and the entire incident expunged from all files.  Finally, he asks that he be placed back in his previous status without retaliation.

2. September 2007–Denial of Parole

Plaintiff's second claim for relief involves his September 27, 2007 parole hearing.  At that hearing the Montana Parole Board discussed Plaintiff's write-up and the fact that Plaintiff was back in maximum security.  Plaintiff alleges that the Montana Parole Board violated his due

ORDER PERMITTING PLAINTIFF TO FILE AN AMENDED COMPLAINT AND FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE -
CV-07-058-DWM-RKS / PAGE 4

process rights under the "shall release on parole" language upheld by the United States Supreme

Court, by using the immutable factors in a "pretextual reasoning" to deny parole, violated its own

rules, used Plaintiff's housing assignment to deny parole and set him for a review in five years.

For his relief, Plaintiff requests that a new and fair parole hearing be held.

       3.  Religion Claim

Plaintiff's third claim is that Defendants have refused to allow him to visit with his priest

or receive the sacraments.  Plaintiff asks that he be released from administrative segregation in

order to practice his religion.

## II. PRESCREENING

### A. Standard

As Plaintiff is proceeding in forma pauperis, his Complaint is subject to screening under

28 U.S.C. § 1915 and 28 U.S.C. § 1915A, which impose a screening responsibility on the district

court.  Section 1915A reads in pertinent part as follows:

> The court shall review  . . .  as soon as practicable after docketing, a complaint in
> a civil action in which a prisoner seeks redress from a governmental entity or
> officer or employee of a governmental entity [and][o]n review, the court shall
> identify cognizable claims or dismiss the complaint, or any portion of the
> complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim
> upon which relief may be granted; or (2) seeks monetary relief from a defendant
> who is immune from such relief.

28 U.S.C. § 1915A(a) and (b); *see also* 28 U.S.C. § 1915(e)(2)(B) ("Notwithstanding any filing

fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if

the court determines that  . . .  (B) the action or appeal-(i) is frivolous or malicious; (ii) fails to

state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant

who is immune from such relief.").

Both sections 1915A(b) and 1915(e)(2)(B) provide that the Court may dismiss the complaint before it is served upon the defendants if it finds that the complaint is "frivolous" or that it "fails to state a claim upon which relief may be granted."  A complaint is frivolous, if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 1831-32, 104 L.Ed.2d 338 (1989).  A complaint fails to state a claim upon which relief may be granted if a plaintiff fails to allege the "grounds" of his "entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. ____, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007) (quotation omitted).  This requirement demands "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id.*  A complaint must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007)(quoting *Bell*, 127 S.Ct. at 1964 (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957))).

Additionally, "[a] document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson*, 127 S.Ct. at 2200; *Cf.* Fed. Rule Civ. Proc. 8(f) ("All pleadings shall be so construed as to do substantial justice").

**B.  Count One:  Disciplinary Hearing Claim**

Plaintiff's disciplinary hearing claim fails to state a claim upon which relief may be granted.  Plaintiff alleges that the disciplinary procedures used in his hearing were unconstitutional and violated his rights to due process.  (Document 2–Complaint, p. 25).  To state

a claim for a due process violation, a plaintiff must show (1) that he had a protected liberty interest, and (2) that he was deprived of that interest without adequate due process.  The Court need not analyze whether or not Plaintiff had a liberty interest at stake as it is clear from Plaintiff's Complaint and the documents attached to his Complaint that he was not deprived of due process.

In the prison disciplinary setting, the Fourteenth Amendment due process clause requires, "advance written notice of the claimed violation and a written statement of the factfinder[] as to the evidence relied upon and the reasons for the disciplinary action taken," *Wolff v. McDonnell, 418 U.S. 539, 563 (1974)*; an opportunity "to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals," *id. at 566*; and the assistance of a fellow inmate or a staff member if he is illiterate or if the issues are especially complex, *id. at 570*.  He is also entitled to a finding of guilt that is supported by "some evidence," a standard which is met if "there is *any* evidence in the record that *could* support the conclusion reached" by the fact-finder.  *Superintendent v. Hill, 472 U.S. 445, 455-56 (1985)* (emphasis added).  Finally, he is entitled to an impartial fact-finder. *See, e.g.*, *Edwards v. Balisok, 520 U.S. 641, 647 (1997)* ("[t]he due process requirements for a prison disciplinary hearing are in many respects less demanding than those for criminal prosecution, but they are not so lax as to let stand the decision of a biased hearing officer who dishonestly suppresses evidence of innocence.").

Plaintiff's Complaint and exhibits plainly show that all of those requirements were met. Plaintiff has submitted the Disciplinary Infraction Report (signed by him), the hearing decision

ORDER PERMITTING PLAINTIFF TO FILE AN AMENDED COMPLAINT AND FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE - CV-07-058-DWM-RKS / PAGE 7

form (again signed by him) which indicates his own statement of the situation, and the disciplinary appeal form. (Document 2-2--Exhibits to Complaint, pp. 16-18). These forms indicate that Plaintiff received advance written notice of the claimed violation. Plaintiff makes much ado about the changing of the initial charge number from 4229 to 4108 but the Court finds this change to be insignificant. While the infraction number may have been changed, the charge itself, "conspiring to commit 4101–escape" never changed. The Court finds that Plaintiff had written notice of the claimed violation.

Next, Plaintiff admits in his Complaint that he received a written statement of the disciplinary hearing decision and he presented that document (which was signed by Plaintiff) as one of his exhibits. That form states the evidence relied upon and the reasons for the disciplinary action taken. (Document 2-2, p. 17).

Plaintiff was also given an opportunity to present evidence and witnesses on his behalf. He signed the notice of hearing which specifically informed him of his right to present evidence and witnesses on his behalf. Plaintiff's main complaint in this regard seems to be that he was not given an interview by the disciplinary investigator, Officer Pentlair. He contends that the denial of an interview/investigation denied his right to due process. However, due process does not required a particular type of investigation and it does not require that the inmate be interviewed.

The disciplinary hearing decision states that the finding of guilty was based upon a "CI report naming Hawkins and physical evidence found to corroborate." (Document 2-2--Exhibits to Complaint, p. 17). Plaintiff was entitled to a finding of guilt that is supported by "some evidence," a standard which is met if "there is *any* evidence in the record that *could* support the

ORDER PERMITTING PLAINTIFF TO FILE AN AMENDED COMPLAINT AND FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE - CV-07-058-DWM-RKS / PAGE 8

conclusion reached" by the fact-finder.  *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985)

(emphasis added).  The Court finds that Plaintiff's own statements in his Complaint support the

conclusion reached.  Specifically, Plaintiff states,

> In March 2006 Plaintiff was moved to the law security side of the prison.  During
> the summer informant DeMers ask [sic] Plaintiff to join his escape plan.  Plaintiff
> talk [sic] with DeMers at length over the summer, and his friends, giving
> suggestion, but repeatedly denied all offers to join the escape.  He did aid in
> making connections with mutual friends, however.  But in January 2007 he
> informed DeMers he wanted nothing more to do with it, however he still helped
> DeMers talking to other inmates.

(Document 2–Complaint, pp. 5-6, ¶ 25).  Given these admissions, the Court finds that there is

sufficient evidence to support the finding of guilty.

Finally, according to Plaintiff's exhibits, the disciplinary decisions and appeals were all

signed by impartial individuals who were not involved in the investigation or charging process.

(Document 2-2--Exhibits to Complaint, pp. 16-18).  Moreover, Plaintiff does not allege that he

did not have an impartial hearings officer.

So long as the constitutional requirements are observed, even a prison's violation of its

own regulations does not offend due process.  *Walker*, 14 F.3d at 1419-20.  Plaintiff received

constitutional due process.  Thus, Plaintiff has failed to state a viable due process claim and this

claim will be recommended for dismissal.

### C.  Count Two:  Parole Denial

Plaintiff's contention that the Montana Parole Board violated his due process rights when

they denied his parole in September 2007 also fails to state a claim upon which relief may be

granted.  If a challenge to parole procedures would necessarily imply the invalidity of continuing

confinement, then the challenge must be brought as a petition for writ of habeas corpus, not §

1983.  Butterfield v. Bail, 120 F.3d 1023, 1024 (9th Cir. 1997).  Plaintiff's claim for civil

damages amounts to a collateral attack on the denial of his parole and continued incarceration. Id.

This is impermissible under Heck v. Humphrey, 512 U.S. 477, 480 (1994).  Plaintiff's sole

federal remedy is a writ of habeas corpus.  Preiser v. Rodriguez, 411 U.S. 475, 488-490 (1973);

Young v. Kenny, 907 F.2d 874 (9th Cir. 1989).[1]

### D.  Count Three:  Denial of Access to Priest and the Sacraments

Plaintiff alleges that Defendants refused to allow him to visit with his priest or to receive

the sacraments.  Plaintiff's claims could be construed as allegations of interference with

Plaintiff's free exercise of religion in violation of the First Amendment and/or claims under the

Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA").

### 1. First Amendment Free Exercise Violation

The First Amendment to the United States Constitution states in pertinent part, "Congress

shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof

...."  In order for a religious claim to merit protection under this clause, the claim must first meet

two criteria:  (1) the proffered belief must be sincerely held; and (2) "the claim must be rooted in

religious belief, not in 'purely secular' philosophical concerns." *Callahan v. Woods*, 658 F.2d

679, 683 (9th Cir. 1981).  That is, "whether the plaintiff's claim is related to his sincerely held

---

[1]The Court notes that Plaintiff made similar claims in a state petition for writ of habeas corpus which was denied by the Montana Supreme Court.  *See Hawkins v. Board of Pardons and Parole*, OP 08-0046 (March 13, 2008) (Document 8-2, pp. 24-28).  In addition, Plaintiff has filed a federal writ of habeas corpus challenging the denial of his parole for what appear to be the same reasons as those raised herein.  *See* Civil Action No. 08-CV-0025-BLG-RFC-CSO.

ORDER PERMITTING PLAINTIFF TO FILE AN AMENDED COMPLAINT AND FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE - CV-07-058-DWM-RKS / PAGE 10

religious belief." *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994); *see also Shakur v. Schriro*, 514 F.3d 878 (9th Cir. 2008). If the claim satisfies these criteria, the Court must then determine the extent to which the religious beliefs were burdened by the government, consider whether the government has a compelling interest in creating that burden, and decide whether that interest may be satisfied in some less restrictive means. *Callahan*, 658 F.2d at 686-687.

## 2. Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc to 2000dd-1

RLUIPA is a federal statute, not a constitutional provision. A plaintiff may sue for constitutional violations under 42 U.S.C. § 1983; RLUIPA provides a cause of action under a different statute, 42 U.S.C. § 2000cc et seq.[2] 42 U.S.C. § 2000cc-1(a) provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution," unless the government shows that the burden furthers "a compelling governmental interest" and does so by "the least restrictive means." The Act defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Id.* § 2000cc-5(7)(A); *Warsolider v. Woodford*, 418 F.3d 989, 994 (9th Cir. 2005). Claims brought under RLUIPA are subject to a strict scrutiny standard, as opposed to the reasonableness standard employed in cases involving constitutional violations. *See Henderson v. Terhune*, 379 F.3d 709, 715 n. 1 (9th Cir. 2004).

RLUIPA broadly defines "religious exercise" as "'any exercise of religion, whether or not

---

[2] While a plaintiff may sue under 42 U.S.C. § 1983 for violation of any federal law, including a violation of a federal statute like RLUIPA, there is no need to show liability under § 1983 if the plaintiff has a cause of action directly under the federal statute. Therefore, the Court will only consider the RLUIPA claim on its own terms, not under 42 U.S.C. § 1983.

ORDER PERMITTING PLAINTIFF TO FILE AN AMENDED COMPLAINT AND FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE - CV-07-058-DWM-RKS / PAGE 11

compelled by, or central to, a system of religious belief.' " *Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir.2005) (quoting 42 U.S.C. § 2000cc-2(a)). RLUIPA is "to be construed broadly in favor of protecting an inmate's right to exercise his religious beliefs." *Warsoldier*, 418 F.3d at 995 (citing 42 U.S.C. § 2000cc-3(g)). The plaintiff bears the initial burden of demonstrating a prima facie claim that the prison's policies or actions constitute a substantial burden on the exercise of his religious beliefs. *Warsoldier*, 418 F.3d at 994.

As currently plead, Plaintiff's allegation of denial of his ability to practice his religion is insufficient to state a claim. First and foremost, Plaintiff has not identified which specific Defendants are involved in this claim. Plaintiff has named twenty-one defendants in this action and yet he has failed to specifically identify what, if anything, any of them has done with regard to his religion claims. A plaintiff does not state a claim against an individual defendant unless the plaintiff sets forth facts demonstrating how <u>each</u> defendant <u>caused</u> or <u>personally participated in causing</u> a deprivation of his rights. *See, e.g., Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978); *Stevenson v. Koskey*, 877 F.2d 1435, 1438-39 (9th Cir. 1989). Thus, as to <u>each</u> defendant he wishes to hold responsible, a plaintiff must allege specific facts showing what that person did or did not do, when and where, and how each defendant's action or inaction caused or contributed to causing a violation of his civil rights.

Section 1983 imposes liability upon state actors only when their <u>personal conduct</u> violates a plaintiff's constitutional rights. *Monell*, 436 U.S. at 691-94. That is, supervising officers can be held liable under section 1983 "only if they play an affirmative part in the alleged deprivation of constitutional rights." *King v. Atiyeh*, 814 F.2d 565, 568 (9th Cir. 1987). In order to be liable,

a supervising officer has to personally take some action against the Plaintiff or "set in motion a series of acts by others . . . , which he knew or reasonably should have known, would cause others to inflict the constitutional injury." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (internal quotations omitted).

Secondly, Plaintiff's allegations are not entirely clear. While it appears he is Roman Catholic, Plaintiff is not explicit about the exact nature of the practices in which he is not being allowed to engage, or in the manner those practice are being disallowed. See Greene v. Solano County Jail, 513 F.3d 982 (9th Cir. 2008); Warsoldier v. Woodford, 418 F.3d 989 (9th Cir. 2005). Plaintiff should further explain what practices or materials he requires for the exercise of his religion, identify those practices or materials he is not being permitted to engage in or given access to, and explain what effect that deprivation has on his ability to practice his religion.

## III. CONCLUSION

For the reasons set forth above, Plaintiff's disciplinary due process claim and denial of parole claims will be recommended for dismissal. Plaintiff's freedom of religion claim is subject to dismissal for failure to state a claim upon which relief may be granted, however, it is possible that the defects in this claim as set forth above could be cured by further amendment. Accordingly, the Court will allow Plaintiff to file an Amended Complaint only on his religion claim. The Amended Complaint must be filed on the form attached to this Order and it should take into account the guidance provided in this Order. Plaintiff should not re-allege those claims which are recommended for dismissal below.

Plaintiff is reminded that Rule 18(a) of the Federal Rules of Civil Procedure provides that

ORDER PERMITTING PLAINTIFF TO FILE AN AMENDED COMPLAINT AND FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE - CV-07-058-DWM-RKS / PAGE 13

"[a] party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as

independent or alternative claims, as many claims as it has against an opposing party."

Therefore, Plaintiff may state multiple claims against a single party.  However, unrelated claims

against different defendants belong in different lawsuits.  *See George v. Smith*, 507 F.3d 605, 607

(7th Cir. 2007).

Plaintiff is also advised that pursuant to the Prison Litigation Reform Act of 1995, "[n]o

action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other

Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such

administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also*

*Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006).  Exhaustion must occur

*prior* to filing suit. *McKinney v. Carey,* 311 F.3d 1198, 1199-1201 (9th Cir. 2002).  Therefore,

Plaintiff's Amended Complaint should not raise any claims which were not completely

exhausted prior to December 26, 2007 (the date Plaintiff filed his Complaint).

Plaintiff is also reminded that it is inappropriate to attach exhibits to a complaint.  *See*

Rule 8 of Federal Rules of Civil Procedure.  The Court cannot serve as a repository for the

parties' evidence.  Originals or copies of evidence (i.e., prison or medical records, witness

affidavits, etc.) should not be submitted until the course of litigation brings the evidence into

question (for example, on a motion for summary judgment, at trial, or when requested by the

Court).  At this point, the submission of evidence is premature as the Plaintiff is only required to

state a prima facie claim for relief.  Thus, in amending his complaint, Plaintiff should simply

state the facts upon which he alleges a defendant has violated his constitutional rights and refrain

ORDER PERMITTING PLAINTIFF TO FILE AN AMENDED COMPLAINT AND FINDINGS
AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE -
CV-07-058-DWM-RKS / PAGE 14

from submitting exhibits.

Finally, Plaintiff is advised that his amended complaint must be complete in itself without reference to any prior pleading. As a general rule, an amended complaint supersedes the original complaint. *See Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967). Once Plaintiff files an amended complaint, the original pleading no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

Should Plaintiff fail to timely file an Amended Complaint, the Court will recommend that the Complaint be dismissed for failure to state a claim on which relief may be granted, and Plaintiff's filing of the Complaint will count as one strike against him, pursuant to 28 U.S.C. § 1915(g).

Based on the foregoing, the Court hereby enters the following:

## ORDER

1. On or before **July 30, 2008**, Plaintiff may file an amended complaint. If Plaintiff declines to file an amended complaint, he must file a notice with the Court indicating that he wishes to proceed with his initial Complaint.

2. The Clerk of Court is directed to provide Plaintiff a form for filing an amended complaint. If Plaintiff submits an amended complaint, he must use the form. The amended complaint must be legibly written or typed in its entirety, it should be an original and not a copy, and it may not incorporate any part of the original Complaint or other documents by reference. Each allegation in the amended complaint shall be simple, concise, and direct. THE AMENDED

ORDER PERMITTING PLAINTIFF TO FILE AN AMENDED COMPLAINT AND FINDINGS
AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE -
CV-07-058-DWM-RKS / PAGE 15

COMPLAINT SHALL OPERATE AS A COMPLETE SUBSTITUTE FOR (RATHER THAN A MERE SUPPLEMENT TO) THE PRESENT COMPLAINT.  Only the original document must be filed; copies are not necessary.  The amended complaint should consist of a **short** and **plain** statement showing that Plaintiff is entitled to relief.  Plaintiff must give clear factual information describing what occurred that allegedly violated his constitutional rights and he must specify what role each individual defendant took in those alleged deprivations.  Plaintiff shall not set forth claims by merely stating legal conclusions.  The amended complaint shall not contain legal argument, and shall not cite to legal authority, such as case law or statutes.

    3.  At all times during the pendency of this action, Plaintiff SHALL IMMEDIATELY ADVISE the Court of any change of address and its effective date.  Such notice shall be captioned "NOTICE OF CHANGE OF ADDRESS."  The notice shall contain only information pertaining to the change of address and its effective date, except that if Plaintiff has been released from custody, the notice should so indicate.  The notice shall not include any motions for any other relief.  Failure to file a NOTICE OF CHANGE OF ADDRESS may result in the dismissal of the action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

    Further, the Court issues the following:

### RECOMMENDATION

    Plaintiff's disciplinary due process claim and Plaintiff's denial of parole claim should be **DISMISSED** for failure to state a claim.

### NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

ORDER PERMITTING PLAINTIFF TO FILE AN AMENDED COMPLAINT AND FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE - CV-07-058-DWM-RKS / PAGE 16

Pursuant to 28 U.S.C. § 636(b)(1), Plaintiff may serve and file written objections to this Findings and Recommendations within ten (10) business days of the date entered as indicated on the Notice of Electronic Filing.  A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made.  The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations.  Failure to timely file written objections may bar a de novo determination by the district judge.

DATED this 2nd day of July, 2008.

/s/ Keith Strong_____
Keith Strong
United States Magistrate Judge

ORDER PERMITTING PLAINTIFF TO FILE AN AMENDED COMPLAINT AND FINDINGS
AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE -
CV-07-058-DWM-RKS / PAGE 17